The Honorable Tim Shallenburger State Treasurer 900 S.W. Jackson Street, Suite 201 Topeka, Kansas 66612-1235
Dear Mr. Shallenburger:
You request our opinion regarding the responsibility of local governmental entities[1] who currently hold certificates of deposit issued by Firstar Bank. You indicate that Firstar Bank recently surrendered its Kansas charter when it was purchased by a national bank, the main office of which is located outside of this State. This creates a problem for those local governmental entities who hold certificates of deposit that were issued by Firstar Bank at a time when Firstar Bank was eligible to hold public funds. You inquire whether these entities must liquidate their certificates of deposit prior to maturity and risk paying early withdrawal penalties, or whether they can wait until the certificates reach maturity.
K.S.A. 2000 Supp. 12-1675 provides, in part:
 "(a) The governing body . . . may invest any moneys which are not immediately required for the purposes for which the moneys were collected or received, and the investment of which is not subject to or regulated by any other statute.
"(b) Such moneys shall be invested only:
 "(2) [I]n . . . certificates of deposit . . . with maturities of not more than two years: (A) In banks
. . . which have main or branch offices located in such investing governmental unit . . . ."
K.S.A. 2000 Supp. 12-1675a defines bank:
 "`Bank' means any bank incorporated under the laws of this state, or organized under the laws of the United States and which has a main office in this state."[2]
In order to answer this question, it is helpful to consider the history of the public fund depository laws. This history reveals a struggle between Kansas bankers who want to keep public funds in Kansas banks and local governmental entities who want to be able to choose from a menu of financial institutions that offer "safety, liquidity and a good return"[3] regardless of the institution's domicile.[4]
Prior to 1976, local governmental entities were authorized to invest their idle funds in certain instruments, including certificates of deposit, in banks located in any county where all or part of the local governmental entity was located.[5] If there was no qualifying bank in the county, then the entity could select a bank in an adjacent county. There was no need to address the domicile of a bank because both national and state chartered banks had to transact business at the place of business identified in their charter.[6]
In 1982, K.S.A. 12-1675 was amended to require that idle funds be deposited only in a financial institution with a "home office" located in the investing governmental unit.[7] Former Attorney General Robert T. Stephan opined that this new requirement was prospective and that idle funds invested in financial institutions prior to July 1, 1982 could remain in financial institutions that did not have a home office in the governmental unit until the governmental unit could withdraw the investment without incurring a loss of interest or withdrawal penalties.[8] In 1986, the requirement that a financial institution have a home office located in the investing governmental unit was repealed. However, financial institutions still had to have a home office located in the State of Kansas.[9]
Finally, in 1997, the Kansas Bankers Association again sparred with the League of Kansas Municipalities and its allies about the necessity of a financial institution having a main office in Kansas.[10] The League and other local governmental entities argued that competition among financial institutions would "ensure a reasonable rate of return."[11]
The Kansas Bankers Association countered with the need to "safeguard" public funds and promote Kansas banks that would presumably invest in the local community and the State.[12] Eventually, a compromise was reached that maintained the main office requirement for idle funds but opened the door to financial institutions with main offices outside of the State as possible depositories of active funds.[13] There is no evidence that the Legislature ever considered the possibility that a depository holding idle public funds would lose that status by removing its main office from the State and, therefore, the public fund statutes do not address this scenario.
A certificate of deposit is simply a contract whereby a bank acknowledges receipt of a sum of money on deposit which the bank promises to pay to the depositor at a prescribed time.[14] Generally, a premature withdrawal of those funds by a depositor may trigger early withdrawal penalties or a loss of interest. Whether Firstar Bank has breached its agreement with its depositors by virtue of its loss of eligibility is dependent upon the terms of each contract and we offer no opinion in that regard.
There is no question that the local governmental entities that contracted with Firstar Bank prior to Firstar Bank's loss of eligibility as a public depository were in compliance with the requirement that certificates of deposit be issued only by eligible depositories. Since local governmental entities are stewards of the public funds entrusted to them by their constituents,[15] it could not have been the Legislature's intent by enacting K.S.A. 2000 Supp. 12-1675 to require such entities to liquidate their certificates of deposit and suffer the ensuing financial repercussions when a depository loses its eligibility to hold public funds by virtue of moving its main office. Moreover, there is no statutory penalty for failing to comply with K.S.A. 2000 Supp.12-1675, arguably supporting an interpretation that the statute does not require local governmental entities to liquidate certificates of deposit issued by Firstar Bank prior to maturity.
We also note that because the statute limits the term of certificates of deposit to two years, all certificates issued by Firstar Bank should be liquidated within two years from the date Firstar Bank lost its eligibility to be a public depository. We caution that those certificates cannot be renewed once they mature because any renewal will be regarded as a new investment that must be placed in an eligible depository.[16]
Summarizing, it is our opinion that a local governmental entity that holds a certificate of deposit issued by Firstar Bank prior to Firstar Bank's loss of eligibility as a public depository may continue to hold the certificate until the certificate matures at which time the local governmental entity must remove the funds and place them with an eligible public depository.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] Counties, cities, townships, school districts, area vocational-technical schools, community colleges, firemen's relief associations, community mental health centers, community facilities for the mentally retarded and any other governmental entity having authority to receive hold and expend public funds. K.S.A. 2000 Supp. 12-1675(a).
[2] K.S.A. 2000 Supp. 12-1675a(a) (emphasis added).
[3] Minutes, Senate Financial Institutions Insurance Committee, Jan. 28, 1997, Attachment 2.
[4] Minutes, Senate Financial Institutions Insurance Committee, Jan. 28, 1997. See also, Attorney General Opinion No. 2000-15.
[5] L. 1968, Ch. 217, § 1; L. 1969, Ch. 80, § 1; L. 1973, Ch. 63, § 6; L. 1975, Ch. 68, § 1.
[6] L. 1975, Ch. 44, § 16; 12 U.S.C. § 36 and 81.
[7] L. 1982, Ch. 52, § 6.
[8] Attorney General Opinion No. 82-142.
[9] Attorney General Opinion No. 95-39. See Bill Brief on 1986 H.B. 3129 which states that HB 3129 would allow governmental subdivisions to designate branch offices of a bank as a depository for public funds provided the bank had a home office in Kansas.
[10] Minutes, Senate Committee on Financial Institutions Insurance, January 28, 1997.
[11] Id., Attachment 2.
[12] Minutes, supra note 10, Attachment 3.
[13] See Senate Journal, May 4, 1997, pg. 766 and Attorney General Opinion No. 2000-15.
[14] 9 C.J.S. Banks Banking § 294; K.S.A. 84-3-104(j).
[15] 64 C.J.S. Municipal Corp. § 1880.
[16] See Attorney General Opinion No. 82-142.